IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    3:12-cv-00280-MA

              Plaintiff,                    OPINION AND ORDER

    v.

$15,333.00 IN UNITED STATES
CURRENCY, *in rem*,

              Defendant.


S. AMANDA MARSHALL
United States Attorney
LESLIE J. WESTPHAL
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Plaintiff

DON L. BROWN
11014 S.E. Nineteenth Avenue, #77
Everett, Washington 98208

    *Pro se* Claimant

MARSH, Judge

    On November 15, 2013, plaintiff in this civil forfeiture proceeding moved to strike the claim of Don L. Brown on account of claimant's repeated failure to comply with court orders and

1 - OPINION AND ORDER

discovery rules.  Claimant is proceeding *pro se* in this matter.  As of the date of this order, claimant has not filed any response to plaintiff's motion.

## FACTUAL BACKGROUND

Plaintiff initiated this action on February 16, 2012.  On March 28, 2012, claimant filed a claim on the defendant currency, and the parties began litigating this action.  On August 2, 2012, claimant informed plaintiff's counsel by telephone that he was in the process of deciding whether to hire counsel or proceed *pro se*.  Declaration of Leslie J. Westphal (#23) ¶ 2 (Westphal Dec.).  Plaintiff's counsel asked claimant to call back by the end of the following week to inform her of his decision regarding counsel, and informed claimant that if she did not hear back from him, plaintiff would begin discovery.  Id.  Plaintiff's counsel did not hear back from claimant.  Id.

On August 23 and 29, 2012, respectively, plaintiff served its First Set of Interrogatories and Request for Admissions on claimant.  Decl. of Jessica L. Jones (#15), exhs. A-C.  Having received no response to either request, plaintiff's counsel sent a letter to claimant on November 5 reminding him about the interrogatories and request for admissions, advising him of the consequences of failure to respond, and granting him an additional week to respond to the requests.  Id. exh. D.  Claimant did not respond.

Prior to filing a Motion to Strike Claim, plaintiff called claimant on January 24, 2013 and January 28, 2013, but was unable to reach him. Pl.'s Mot. to Strike Claim (#13). Accordingly, on January 29, 2013, plaintiff moved to strike Mr. Brown's claim, and alternatively moved for summary judgment largely based on the admissions that were deemed admitted as a result of claimant's failure to respond.

A week later, on February 5, 2013, claimant called plaintiff's counsel. Westphal Dec. ¶ 4. Claimant represented to plaintiff's counsel that he had not received plaintiff's motion to strike because he had not checked his mail. Id. Plaintiff's counsel reminded claimant that he had not responded to plaintiff's discovery requests, and needed to respond to plaintiff's motion to strike to avoid forfeiture of the defendant currency. Id. Nonetheless, claimant did not immediately respond to plaintiff's motion, and, on February 19, 2013, the court issued an order advising claimant that he must respond by March 5 and that failure to do so would result in the striking of his claim. CR #17.

On March 5, claimant responded to plaintiff's motion, advising the court that he was attempting to obtain legal counsel and requesting additional time to do so. CR #19, 20. On March 25, 2013, the court issued a summary judgment advice notice instructing claimant to file his substantive opposition to the government's motion within 30 days. CR #25. On April 19, 2013, claimant

responded by way of filing a motion to suppress, his responses to the Request for Admissions served on him in August of 2012, and a motion for an extension of time seeking to have his responses to the Request for Admissions deemed timely. CR #27, 28.

On July 22, 2013, after a round of briefing, the court construed claimant's motion for extension of time to respond to the request for admissions as a motion to withdraw admissions, granted the motion, and deemed claimant's responses timely.  The court, however, "admonished" claimant that "*pro se* litigants must comply with the rules of civil procedure and court-imposed deadlines that govern other litigants." CR #42 at 2.  The court additionally denied plaintiff's motion to strike and for summary judgment, and determined that an evidentiary hearing was necessary to resolve claimant's motion to suppress. Id. at 2-5.  In anticipation of holding a hearing, the court ordered the parties to produce witness lists, witness statements, and an estimated hearing length within 45 days. Id. at 5.

On September 5, 2013, plaintiff filed its witness list, witness statements, and estimated hearing length. CR #44. Rather than comply with the court's order, claimant filed a "Motion for Return of Illegally Seized Money" on September 13, 2013 that did not include any materials relevant to the evidentiary hearing, but rather alleged incorrectly that plaintiff failed to file its materials. CR #48.

On September 16, 2013, the court issued an Order to Show Cause informing claimant that he failed to comply with the court's order of July 22, and ordering him to file his witness list and witness statements no later than September 26, 2013. CR # 46. The court additionally warned claimant that "failure to timely comply with this order will result in the denial of his Motion to Suppress Evidence." Id. at 2. Two days later, the court denied claimant's Motion for Return of Illegally Seized money without prejudice to the pending claim, advised claimant that plaintiff timely filed its witness list and statements, and reminded claimant of his duty to file his witness list and statements no later than September 26. CR #49.

On September 30, 2013, claimant filed an "Objection to Government's Witness List, and Witness Statements" that did not include his own witness list or statements, but rather sought an additional 45-day extension. CR #55. On October 2, 2013, the court denied claimant's request for an additional extension of time and issued an order denying claimant's Motion to Suppress Use of Property as Evidence for failure to comply with the court's orders of July 22 and September 16, and warning claimant that "any further noncompliance with court orders or deadlines, or discovery rules and deadlines, may result in striking of his claim." CR #56. One week later, on October 9, 2013, claimant submitted a "Response and Declaration in re Show Cause and Witness Statements" in which he

stated that his only witness would be the officer that pulled him over in the traffic stop in question, and asserted that his failure to comply with the court's orders was caused by postal delays. CR #59.

On November 15, 2013, plaintiff filed the instant motion to strike Mr. Brown's claim and answer. CR #60. In an attached declaration, counsel for the government explained that on October 4, 2013, the government noticed claimant's deposition for October 17, 2013 and invited claimant to contact counsel if he wished to change the date. Second Declaration of Leslie J. Westphal (#62) ¶ 2. In addition, counsel for plaintiff reminded claimant that he was required to answer the interrogatories the government had served more than a year prior and attached an additional copy of the request. Id. at ¶ 3. On October 10, 2013, claimant called plaintiff's counsel and asked to reschedule his deposition for November 14. Id. ¶ 5. Plaintiff's counsel agreed and sent a new Notice of Deposition to claimant reflecting the agreed date. Id.

Claimant failed to appear at his deposition on November 14, 2013 without giving prior notice to plaintiff's counsel. Id. at ¶ 7. When plaintiff's counsel called claimant to ask why he neither appeared for the deposition nor called to reschedule, claimant indicated that he was caring for a sick person. Id. at ¶ 9.

On November 15, plaintiff filed the instant motion to strike claimant's claim and answer. CR # 61. On November 18, counsel for

plaintiff submitted an additional declaration informing the court that plaintiff received at least partial responses to plaintiff's First Set of Interrogatories on November 15, 2013, though not until after plaintiff filed its motion.  CR #65.  As of the date of this order, claimant has not responded to plaintiff's motion to strike.

## DISCUSSION

The court considers five factors before dismissing a case for failure to comply with court orders and discovery rules: (1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.  Malone v. United States Postal Service, 833 F.2d 128, 130 (9th Cir. 1987); Adriana Intern. Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990); United States v. American Black Bears, No. 05-35998, 2007 WL 2255112, at *1 (9th Cir. Jul. 10, 2007). When a court order is violated, the third and fifth factors carry greater importance.  See Adriana Intern. Corp., 913 F.2d at 1412. Ultimately, however, the Malone five-part test is a balancing test. Id. at 1413.  In addition to the Malone factors, to justify a sanction of dismissal, the court must find that the party's violations of the court's orders were due to the willfulness, bad faith, or fault of the party.  Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d 585, 589 (9th Cir. 1983).

I. *Malone* **Factors**

A.    **Public's Interest in Expeditious Resolution**

As the Ninth Circuit noted in Adriana, the first factor always militates in favor of sanctions where a court order has been violated. Id. at 1412. In this case, however, it militates especially strongly toward dismissal. This relatively routine civil forfeiture action has been open for nearly two years without making significant progress toward final judgment. Claimant's noncompliance with court orders and discovery rules has been a significant cause of this delay, including the litigation of a motion to strike and for summary judgment that was, as a practical matter, a result of claimant's noncompliance. Considering claimant's extensive history of noncompliance, the ineffectiveness of lesser sanctions in bringing claimant into compliance, and the delays caused and likely to be incurred in the future thereby, the public's interest in expeditious resolution of this matter weighs strongly in favor of dismissal.

B.    **Court's Need to Manage its Docket**

When a court order is violated, the second factor also militates in favor of dismissal. Id. For many of the same reasons cited in the discussion of the first factor, the second factor militates strongly toward dismissal in this case.

///

///

**C.    Risk of Prejudice to Plaintiff**

Prejudice is established if claimant's "actions impair [plaintiff's] ability to go to trial or threaten to interfere with the rightful decision of the case." Id. at 1412. Delay alone is insufficient to establish prejudice, but failure to produce documents as ordered or failure to appear at a scheduled deposition can be sufficient. Id.

The third factor also militates toward dismissal. Although insufficient alone to constitute prejudice, claimant's noncompliance with rules and orders has caused substantial delay in the litigation of this civil forfeiture action. In addition to delay, claimant's noncompliance has prejudiced plaintiff's ability to conduct orderly discovery and has forced plaintiff to needlessly expend additional effort and incur expenses. It took seven months after the deadline and the filing of a motion to strike and for summary judgment before claimant responded to plaintiff's Request for Admissions. It took more than a year after the deadline, repeated warnings from the court about compliance with discovery rules, two notices by plaintiff, and another threatened motion to strike his claim before claimant responded to plaintiff's First Set of Interrogatories. Finally, despite finding a mutually agreeable date for plaintiff to take claimant's deposition, claimant failed to either appear on the agreed date or advise plaintiff in advance that circumstances prevented him from appearing. Considering

9 - OPINION AND ORDER

claimant's consistent failure to timely and orderly participate in discovery, I find that, absent dismissal, plaintiff is likely to needlessly incur such costs and effort in the future.

In addition, considering many of claimant's instances of noncompliance have involved discovery, I find that claimant's actions have impaired plaintiff's ability to obtain the information to which it is entitled, and ultimately to fully present its case at trial.  Thus, there is risk of further prejudice to plaintiff absent dismissal.

**D.    Public Policy Favoring Disposition on the Merits**

Public policy always favors disposition of cases on the merits.  Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). The responsibility to facilitate the proper disposition of claims on their merits is among the most sacred duties imposed on a court. When a *pro se* litigant, such as claimant, appears before the court, good judicial practice counsels some measure of additional patience to ensure the litigant has a full and fair opportunity to present his case to the court.

*Pro se* litigants, however, have a duty to comply with the applicable rules of civil procedure and court orders.  See Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th Cir. 1986).  Both plaintiff and the court have demonstrated considerable patience with claimant throughout the course of this proceeding.  Thus, while I seriously consider the public policy favoring disposition on the merits, I

ultimately conclude that it is substantially outweighed by the other factors considered in determining whether to strike claimant's claim and answer.

### E.    Availability of Less Drastic Sanctions

In considering the availability of less drastic sanctions, the court must consider the impact of the sanction and the adequacy of less drastic sanctions.  Id.  In doing so, the court must: (1) explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate; (2) implement alternative sanctions before ordering dismissal; and (3) warn the party of the possibility of dismissal.  Id. at 1412-13.

### 1.    Feasibility of Less Drastic Sanctions

Less drastic sanctions are no longer feasible.  Less drastic sanctions include "'a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, the temporary suspension of the culpable counsel from practice before the court, dismissal of the suit unless new counsel is secured, preclusion of claims or defenses, or the imposition of fees and costs upon . . . counsel." Malone, 833 F.2d at 132 n.1 (quoting Titus v. Mercedes Benz of North America, 695 F.2d 746, 749 n.6 (3d Cir. 1982)); Yancey v. NORCOR, No. 3:11-cv-000363-MO (#85), 2013 WL 275601, at *3 (D.Or. Jan. 24, 2013).

Through the course of this litigation, the court has, at various times, advised claimant of his obligations and excused

11 - OPINION AND ORDER

prior noncompliance (CR # 25, 42), warned plaintiff of the consequences of future noncompliance (CR #46, 56), and denied a motion after claimant did not comply with court orders facilitating its litigation (CR #56). After each sanction, claimant briefly demonstrated somewhat improved compliance before quickly relapsing into noncompliance. Further repetition of such sanctions would serve no purpose.

Sanctions such as a fine or the imposition of costs or attorney's fees would be neither effective nor just if imposed on a *pro se* litigant of modest financial means. A formal reprimand or temporary suspension from practice are inapplicable where the offending litigant is *pro se*. Placing the matter at the bottom of the court's calendar would only serve to further prolong this litigation, undermine the public's interest in expeditious resolution, and interfere with plaintiff's right to resolve the instant civil forfeiture action. Finally, given claimant's representations that he has been considering obtaining counsel since August of 2012 and seeking counsel since March of 2013 to no avail, further suspending this litigation to provide him more time to do so would serve no purpose. Considering the ineffectiveness of the sanctions imposed to date, and the impracticability of alternative sanctions, I find that less drastic sanctions are not feasible.

///

### 2.   Implementation of Alternative Sanctions

As discussed extensively above, through the course of this litigation the court has implemented an escalating series of sanctions, beginning with advisories and excuse of past noncompliance, progressing to warnings about the consequences of noncompliance and orders to comply, and, most recently, the denial of a substantive motion when plaintiff failed to comply with court orders facilitating its litigation.   The court has implemented alternative sanctions with very little to show for it.

### 3.   Warning of Possible Dismissal

In the order denying claimant's motion to suppress for noncompliance with court orders, the court warned claimant that "any further noncompliance with court orders and deadlines, or discovery rules and deadlines, may result in striking of his claim." CR #56 at 3.  Claimant did not heed that warning, however, as claimant violated discovery rules by failing to appear for his deposition within six weeks of the order.

The fifth <u>Malone</u> factor weighs very strongly in favor of dismissal.   Claimant has been given multiple opportunities to conform his conduct to the rules of civil procedure and orders of the court, but he has repeatedly refused to do so.  Because four of the five factors militate in favor of dismissal, I conclude that dismissal is appropriate under the <u>Malone</u> factors.

///

## II.  <u>Willfulness, Bad Faith, and Fault</u>

The conclusion that claimant's noncompliance with discovery rules and court orders was due to willfulness and bad faith is unavoidable.  Claimant's failure to comply with discovery rules despite repeated advisories from plaintiff's counsel, as well as his failure to appear at his deposition without notice, make clear that claimant willfully flouted his discovery obligations in bad faith.

I also find that claimant willfully failed to comply with court orders.  I find that claimant's assertion that postal delays caused his failure to timely comply with the court's show cause order is farfetched.  Claimant alleged that both the court's show cause order and order denying claimant's Motion for Return of Illegally Seized Money reached him on September 28, 2013; 12 and 10 days, respectively, after the orders were issued.  Throughout the course of this litigation, mail between claimant and the court has consistently been delivered between two and four days after sending.  Claimant has not alleged he was confused about how to comply with the order.  The record indicates, then, that claimant simply chose not to comply with the court's repeated orders until after the court denied his motion to suppress.

In sum, viewing the history of this case as a whole, it is clear that this is not a case in which claimant mistakenly misplaced a discovery request or accidentally missed a deadline.

Rather, it is a case in which claimant repeatedly chose to litigate pursuant to his own rules rather than those contained in the Federal Rules of Civil Procedure or the court's orders.  I have no trouble concluding that claimant's noncompliance was willful and in bad faith.

### CONCLUSION

Based on the foregoing, claimant's Claim of Property (#5) and Answer to Complaint (#6) are STRICKEN.

IT IS SO ORDERED.

DATED this _18_ day of December, 2013.

Malcolm F. Marsh
United States District Judge

15 - OPINION AND ORDER